UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UDO OLADIPUPO,

    Petitioner,

v.                                        Case No. 23-CV-294

DALE J. SCHMIDT,

    Respondent.

## DECISION AND ORDER

### 1. Background

Udo Oladipupo, a citizen of Nigeria, is detained by Immigration and Customs Enforcement (ICE) at the Dodge County Detention Facility in this district. He has been in ICE custody since July 22, 2022, following his conviction for strangulation in Marion County, Indiana. (ECF No. 1 at 6.) ICE concluded that his conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). Therefore, Oladipupo is subject to expedited removal under 8 U.S.C. § 1228(b). (ECF No. 1 at 6.) Oladipupo is challenging his removal to Nigeria, but because of his underlying conviction ICE has determined he is statutorily ineligible for release while his challenge is being considered, *see* 8 U.S.C. § 1226(c).

Oladipupo filed a motion challenging ICE's finding that his underlying conviction rendered him ineligible for release, *see In re Joseph*, 22 I. & N. Dec. 799, 1999 BIA LEXIS 25 (B.I.A. May 28, 1999) (ECF No. 1-20), which the immigration judge denied (ECF No. 1-21).

On March 3, 2023, Oladipupo filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asking this court to order either that he be promptly released or afforded an individualized bond hearing where the burden is on the government to show he is a risk of flight or a danger to the community. (ECF No. 1.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 11.)

**2. Due Process and 8 U.S.C. § 1226(c)**

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Hyung Joon Kim*, 538 U.S. 510, 513 (2003). This broad authority includes the power to detain aliens during removal proceedings. *Id.* at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."). Nonetheless, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Title 8, United States Code Section 1226(c) mandates that, other than aliens in the federal witness protection program, an alien convicted of an aggravated felony, *see* 8

U.S.C. § 1227(a)(2)(A)(iii), shall be detained pending a decision on whether the alien is to be removed from the United States. Although an alien may challenge whether he was convicted of an aggravated felony, *see Joseph*, 22 I. & N. Dec. 799, 1999 BIA LEXIS 25, if it is determined that he was, he must be detained until a final decision is made as to whether he is to be removed.

In *Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to § 1226(c), holding, "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Id.* at 513. It distinguished *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Court held that an alien ordered removed was entitled to a bond hearing if his subsequent detention became protracted. *Demore*, 538 U.S. at 529. Detention following an order of removal was potentially permanent, whereas detention under § 1226(c) ends once a decision is made on the alien's removability. The process to decide an alien's removability was generally short—90 days in the vast majority of cases and an average of about five months in the minority of cases when the alien appealed. *Demore*, 538 U.S. at 530.

However, Justice Kennedy, concurring in the 5-4 decision in *Demore*, stated:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Were there

> to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Id.* at 532-33 (Kennedy, J., concurring, citations omitted).

The Supreme Court subsequently held that the Court of Appeals for the Ninth Circuit erred when it applied the canon of constitutional avoidance to read into 1226(c) a requirement that an alien be afforded a bond hearing every six months. *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). The Court, however, did not address the merits of the underlying constitutional arguments and thus did not determine whether protracted detention of aliens under 1226(c), without an individualized bond hearing, violates due process. *Id.* at 851.

Oladipupo's claim that due process requires that he be given a bond hearing fits into a gap left in the Court's decisions in *Demore* and *Jennings*. *See, e.g.*, *Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808, 815 (C.D. Ill. 2018). However, well before either *Jennings* or *Demore* the Court of Appeals for the Seventh Circuit rejected the argument that § 1226(c) violated due process by not affording the petitioner a bond hearing. *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). In *Parra* the court found that the prospect of an alien subject to § 1226(c) ultimately avoiding removal was so remote that he had no liberty interest meriting protection:

> An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on

> postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

*Parra*, 172 F.3d at 958.

In a decision following *Demore*, the court of appeals again summarily rejected the notion that an alien detained under § 1226(c) was entitled to a bond hearing. *Velez-Lotero v. Achim*, 414 F.3d 776, 782 (7th Cir. 2005).

However, since *Parra*, an alien subject to § 1226(c) challenging his removal cannot be fairly characterized as merely delaying the inevitable; it is plausible that certain aliens ultimately will not be removed. For example, when the court decided *Parra*, the United Nations Convention Against Torture, which forms the basis for Oladipupo's defense, had not yet been a routine defense to removal for persons subject to § 1226(c). *Cf. Diakite v. INS*, 179 F.3d 553, 554 (7th Cir. 1999) (noting, in the first decision from the Court of Appeals for the Seventh Circuit discussing the Convention Against Torture, that regulations implementing the Convention were first adopted on February 19, 1999). And in *Velez-Lotero* the petitioner argued only that § 1226(c) was not narrowly tailored because it did not distinguish between lawful permanent residents and all other aliens. *Velez-Lotero*, 414 F.3d at 782. In neither *Parra* nor *Velez-Lotero* did the court assess protracted detention under § 1226(c) vis-à-vis due process.

Thus, no controlling authority forecloses the argument that Oladipupo presents. And numerous district courts in this circuit have been receptive to similar arguments

following *Jennings*. *See, e.g., Baez-Sanchez*, 360 F. Supp. 3d at 816; *Vargas v. Beth*, 378 F. Supp. 3d 716 (E.D. Wis. 2019); *Doe v. Beth*, No. 18-C-1672, 2019 U.S. Dist. LEXIS 72184 (E.D. Wis. Apr. 29, 2019); *Ochoa v. Kolitwenzew*, 464 F. Supp. 3d 972, 989 (C.D. Ill. 2020); *Ruderman v. Kolitwenzew*, 459 F. Supp. 3d 1123, 1138 (C.D. Ill. 2020); *Parzych v. Prim*, No. 19 C 50255, 2020 U.S. Dist. LEXIS 35171, at *10 (N.D. Ill. Mar. 2, 2020); *Favi v. Kolitwenzew*, No. 20-cv-2087, 2020 U.S. Dist. LEXIS 77772, at *15 (C.D. Ill. May 4, 2020); *Rocha-Sanchez v. Kolitwenzew*, 551 F. Supp. 3d 870, 882 (C.D. Ill. 2021); *Santos v. Clesceri*, No. 3:20-cv-50349, 2021 U.S. Dist. LEXIS 31218, at *20 (N.D. Ill. Feb. 19, 2021); *Maya v. Acuff*, No. 21-cv-755-NJR, 2021 U.S. Dist. LEXIS 202893, at *16 (S.D. Ill. Oct. 21, 2021).

Factors courts evaluate to determine whether continued detention without a bond hearing is unconstitutional include

> (1) the total length of detention to date, including whether the immigration detention exceeds the time the alien spent in prison for the crime that allegedly renders him removable; (2) the likely duration of future detention; (3) the conditions of detention, including whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention; (4) whether delays in the removal proceedings were caused by the detainee or the government; and (5) the likelihood that the removal proceedings will result in a final order of removal, including whether the alien has asserted colorable defenses to removal.

*Vargas*, 378 F. Supp. 3d at 727.

Based on this authority, and particularly Justice Kennedy's concurrence in *Demore*, the court joins in the view that protracted detention of an alien subject to § 1226(c) may, in particular cases, violate due process absent an individualized bond

hearing. Therefore, the court turns to the question of whether Oladipupo's detention violates due process.

### 3. Oladipupo's Detention

Whether Oladipupo will ultimately prevail in his efforts to avoid removal is largely speculative. He has not presented this court with the entirety of his defense. But he has demonstrated that he has a colorable and plausible defense against removal. There is no indication that his efforts are simply an attempt to delay inevitable removal. *Cf. Parra*, 172 F.3d at 958. His "colorable challenge to his removability weighs in favor of his entitlement to a bond hearing." *Vargas*, 378 F. Supp. 3d at 728 (citing cases).

While he awaits resolution of the immigration proceedings Oladipupo is incarcerated in a local jail among criminal defendants awaiting trial and those serving sentences. (ECF No. 9-2.) His conditions are indistinguishable from these defendants aside from the fact that he has increased access to immigration resources and officials. (ECF Nos. 9 at 23-24; 9-2.) Thus, he is subject to all the restraints and hazards that attend incarceration in a penal institution. This factor thus also weighs in favor of finding that due process requires a bond hearing.

All of the remaining factors relate to the duration of Oladipupo's detention. These temporal considerations are most significant in determining whether due process requires a bond hearing because it is only when detention becomes unreasonably

protracted that due process requires a bond hearing. *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

Oladipupo has been in ICE custody for nearly ten months, which is approaching twice as long as the five months that the Supreme Court in 2003 noted was the average for a person who appealed, and well beyond the six months applicable to the plaintiff in *Demore*, 538 U.S. at 531. Numerous courts have found detention of this range sufficiently protracted so as to require a bond hearing. *See Vargas*, 378 F. Supp. 3d at 727 (citing cases).

With respect to his underlying conviction, Oladipupo was sentenced to a year in jail. (ECF No. 1-6 at 2.) But he spent only 92 days in custody (which accounted for time he was detained pre-trial). (ECF No. 1-6 at 2.) He received credit for an additional 92 days, the remainder of the year was suspended, and he was placed on probation. (ECF No. 1-6 at 2.) Thus, he has already spent more than three times as long in immigration custody than he spent in custody regarding the felony conviction that subjects him to mandatory detention.

The court can offer little more than a guess as to how long Oladipupo's detention might last. Presumably he will continue fighting his removal until he either prevails or is out of options. The former could occur quite quickly. On the other hand, it might take a long time for Oladipupo to exhaust his means of fighting his removal, especially because his strategy includes challenging his underlying conviction (ECF No. 1, ¶ 15).

*Cf. Baez-Sanchez*, 360 F. Supp. 3d at 810 (noting that petitioner had been in custody for four years due to "numerous appeals and remands"). But, as the Supreme Court noted, his detention *will* end one way or another; it cannot last indefinitely. *Demore*, 538 U.S. at 529 (distinguishing *Zadvydas*, 533 U.S. 678, which discussed "potentially permanent" detention of persons ordered removed).

However, more important than the mere length of detention is the reason for the delay and, specifically, whether the government caused an unreasonable delay. *See Torres v. Schmidt*, No. 19-C-929, 2019 U.S. Dist. LEXIS 131401 (E.D. Wis. Aug. 6, 2019); *see also United States v. Infelise*, 934 F.2d 103, 104 (7th Cir. 1991) (discussing due process vis-à-vis pretrial detention under the Bail Reform Act); *cf. Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007) (suggesting that habeas relief for an alien subject to § 1226(c) would be appropriate only if the delay "was not procured in whole or part by [the alien] himself"). As Judge Posner noted in the context of a due process challenge to pretrial detention under the Bail Reform Act:

> If judge and prosecutor are doing all they reasonably can be expected to do to move the case along, and the statutory criteria for pretrial detention are satisfied, then we do not think a defendant should be allowed to maintain a constitutional challenge to that detention. To get to first base, therefore, he must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial …."

*Infelise*, 934 F.2d 103, 104.

Justice Kennedy similarly acknowledged the prerequisite of government responsibility for the unreasonable delay when he stated, "Were there to be an

unreasonable delay *by the INS* in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring, emphasis added).

The length of Oladipupo's detention is largely attributable not to any conduct of the government but rather to the fact that he has not merely appealed his removal but seems to have pulled out every stop in an effort to oppose it. *Cf. Demore*, 538 U.S. at 529-30. That is not to suggest that his efforts lack a good faith basis or that he is "gaming the system" to prolong inevitable removal. *See Baez-Sanchez*, 360 F. Supp. 3d at 815-16. But affording Oladipupo each procedural protection to which he is entitled takes time. *See Torres*, 2019 U.S. Dist. LEXIS 131401. That Oladipupo employed these remedies counts against him no more than the fact that government has afforded him these remedies should count against it.

Thirty-four days after Oladipupo was taken into ICE custody an Immigration Judge on August 25, 2022, vacated the immigration officer's finding and ordered Oladipupo placed in withholding-only proceedings. (ECF Nos. 1-13; 9-1, ¶ 11.) A hearing was set for September 7, 2022, but was continued at Oladipupo's request, first to September 22, 2022, and then to November 28, 2022. (ECF No. 9-1, ¶¶ 12-15.) The day before that hearing Oladipupo requested another continuance so he could obtain more information. (ECF No. 9-1, ¶ 17.) The Immigration Judge initially rescheduled the

hearing for January 24, 2023, but then pushed it back two more days, to January 26, 2023. (ECF No. 9-1, ¶ 17.) The day before that hearing Oladipupo moved to terminate the withholding-only proceedings, which the government did not oppose in light of a November 28, 2022, data breach that resulted in certain information related to Oladipupo's case being posted on a public version of ICE's website. (ECF Nos. 1, ¶¶ 30, 33, 38, 95; 9-1, ¶ 18.) On January 26, 2023, the Immigration Judge dismissed the withholding-only proceeding without prejudice, and the following day Oladipupo was served with a Notice to Appear. (ECF No. 9-1, ¶¶ 19-20.)

The immigration court set a hearing for February 16, 2023. On that date the court denied the *Joseph* motion[1] that Oladipupo filed three days earlier. (ECF No. 9-1, ¶ 22.) Oladipupo appealed that decision, and briefs were due by April 13, 2023. (ECF No. 9-1, ¶ 23.) The day before that deadline Oladipupo requested an extension of time, which was granted, to May 4, 2023. (ECF No. 9-1, ¶ 23.)

Also in this early-2023 period Oladipupo sought discovery regarding the data breach, which led to status conferences, briefing, and eventually a subpoena. (ECF No. 9-1, ¶¶ 25-27.) A status conference regarding this discovery was set for May 4, 2023. (ECF No. 9-1, ¶ 27.) A final merits hearing has not yet been set. (ECF No. 9-1, ¶ 28.)

---

[1] "Anyone who believes that he is not covered by §1226(c) may also ask for what is known as a '*Joseph* hearing.' See *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.' *Demore* v. *Kim*, 538 U. S. 510, 514, n. 3, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)." *Jennings*, 138 S. Ct. at 838 n.1.

As reflected in this chronology, the length of Oladipupo's detention is primarily attributable to the avenues for relief that he has pursued and his requests for extensions of time. *See Demore*, 538 U.S. at 530-31 (noting that the alien spent "somewhat longer than the average" in custody because he requested and was granted a continuance of the hearing). Oladipupo's argument that he is not responsible for the delay between November 28, 2022, and January 24, 2023 (ECF No. 10, ¶ 6) is unpersuasive. Only a day before the November 28, 2022, hearing Oladipupo requested a continuance. (ECF No. 9-1, ¶ 17.) The government opposed the request. (ECF No. 9-1, ¶ 17.) Oladipupo contends that the delay is attributable to the government because, due to "the number of noncitizens in removal proceedings," January 24, 2023, was the next available date. (ECF No. 10, ¶ 6.) But a delay of two months to reschedule a substantive hearing is not unreasonable. In any event, that such a delay would result from a continuance should not have been unexpected to Oladipupo, or more accurately his counsel.

There is no indication that proceedings were unreasonably delayed for any reason attributable to the government—*e.g.*, case processing backlogs, lack of staff, or lack of preparation by government officials. *See Lin v. Schmidt*, No. 16-CV-368, 2016 U.S. Dist. LEXIS 46047, at *5 (E.D. Wis. Apr. 5, 2016) ("It is also important to note that the delay in Petitioner's removal proceeding is attributable to his own actions (including requests for extensions and the decision to seek protection from removal under the CAT) rather than any improper government purpose or institutional back-log."); *Torres*,

2019 U.S. Dist. LEXIS 131401, at *9-*10; *see also Doe*, 2019 U.S. Dist. LEXIS 72184, at *13 (granting habeas petition and ordering bond hearing in a case where the immigration judge ruled for the petitioner three times and her protracted detention was a result of the government pursuing four appeals). And while the court is mindful that increased caseloads attributable to national policy changes have the potential to delay Oladipupo's case, *see*, *e.g.*, Zolan Kanno-Youngs, *Backlogged Courts and Years of Delays Await Many Migrants*, N.Y. Times (May 13, 2023), https://www.nytimes.com/2023/05/12/us/politics/immigration-courts-delays-migrants-title-42.html, he has not demonstrated that caseload pressures have yet unreasonably delayed his case.

The only material delays attributable to the government are those associated with the data breach. The data breach was the government's fault, and Oladipupo asserts that the government has delayed in disclosing details regarding it. But even accepting that the government's data breach and Oladipupo's pursuit of discovery regarding it has delayed a final decision on whether he is to be removed from the United States, these delays and all others attributable to the government were not collectively so unreasonable as to render his continued detention without a bond hearing a violation of due process.

The statements of the court in *Torres*, 2019 U.S. Dist. LEXIS 131401, are persuasive and equally applicable here:

> Petitioner has been detained for approximately 10 months, but the fact that his detention is approaching the year mark does not, by itself, make

> his detention suspect. Petitioner is availing himself of the procedural remedies available to him and does not dispute that he requested continuances in his administrative proceedings or that there have not been any unusual delays in those proceedings. Although Petitioner contends that his requests were necessary to prepare his case and that he should not be faulted for exercising his rights, delays resulting from Petitioner's actions do not demonstrate that his continued detention is unreasonable or unjustified.

*Id*. at *9-10 (citing *Coello-Udiel v. Doll*, No. 3:17-CV-1414, 2018 U.S. Dist. LEXIS 80558, 2018 WL 2198720, at *4 (M.D. Penn. May 14, 2018) ("While [petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing."). Consequently, because Oladipupo has not demonstrated that his continued detention without a bond hearing violates due process, the court must deny his petition for a writ of habeas corpus.

**IT IS THEREFORE ORDERED** that Udo Oladipupo's petition for a writ of habeas corpus is denied and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of May, 2023.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge